MARSTILLER, J.,
dissenting.
I respectfully dissent, and would affirm the final summary judgment under review, because there remained no factual disputes.
The main alleged breach of fiduciary duty for which Appellants seek recovery is the decision by Michael Durden and other Magic board members (not named in the lawsuit) to reject McCoy’s offer to purchase two of Magic’s radio stations for $62 million — the same two radio stations Magic bought in part with a $65 million loan from DE1/DE2 — and spin them off to an independent McCoy-created business entity. *408 The considerations for the trial court on Appellees’ motion for summary judgment were whether any factual disputes existed, and if not, whether the undisputed facts could support a claim for liability under the pertinent statutory provisions in the Limited Liability Company (“LLC”) Act and under the terms of the amended operating agreement approved by the members of Magic. The majority holds that summary judgment was inappropriate here because factual issues remain as to whether “appellees engaged in ‘willful misconduct’ under the operating agreement.” (Maj. op. at 17.) I disagree for the following reasons.
Section 5.6 of the agreement contains the operative liability provision, and reads, in pertinent part:
(a) Except as otherwise provided herein or in any agreement entered into by such Person and the Company and to the maximum extent permitted by the Act and any other applicable law, no present or former Manager nor any such Manager’s Affiliates, officers, directors, employees, agents or representatives shall be liable to the Company, its Subsidiaries or to any Member for any act or omission performed or omitted by such Person in his, her or its capacity as Manager; provided that, except as otherwise provided herein, such limitation of liability shall not apply to the extent the act or omission was attributable to such Person’s willful misconduct or knowing violation of law as determined by a final judgment, order or decree of an arbitrator or a court of competent jurisdiction^] ...
(Underlining in original; italics supplied.)
It is undisputed that neither DEI nor DE2 holds the capacity of manager for Magic. Consequently, the provision assigning liability for willful misconduct does not apply to those appellees. The trial court was correct to so conclude and enter summary judgment in their favor.
The provision does apply to Michael Durden, who was both a member of Magic’s board and its CEO, and, thus, a manager. But the conclusory allegations in McCoy’s affidavit, submitted in opposition to Appellees’ summary judgment motion, are insufficient to create disputed issues of fact as to willful misconduct by Michael Durden.
Most of the assertions in the affidavit are directed to “the Board” or “the Dur-dens.” Specific to Michael Durden, McCoy averred:
14. With control of the Board, the Dur-dens installed Michael Durden as Chief Executive] Officer of the company, who immediately began to take actions that were intentional, unreasonable, unfair to the company, and apparently to set Magic up for failure. For example: [Here, subparagraphs a through e mention only actions taken by “the Durdens” and Earl Durden,, but not by Michael Durden.]
15. The mismanagement of Magic by Michael Durden and the Durden-con-trolled Board did, in fact, negatively impact the company’s performance, causing Magic to be unable to meet the Durden imposed EBITDA payment requirements.
[[Image here]]
21. At a Board meeting on May 17, 2010, Magic’s Board discussed the prospect of my proposed buy-out. The Board rejected my proposal out-of-hand, with total disregard of the obligations set forth in Paragraph [sic] Paragraphs 5.1(f), 5.4 and 5.6 of the Amended and Restated Operating Agreement. In fact, during the meeting, Michael Dur-den proclaimed, “We would never sell the stations to McCoy.” The Board *409 did not consider any of the factors set forth in Paragraphs 5.6 of the Amended Operating Agreement, nor did the Board follow the procedures required by that section. It was clear that Michael Dur-den never intended to abide by the principles of good faith and fair dealing by meaningfully considering my proposal.
(Emphasis in original.) “Conclusory, general assertions do not create the factual disputes necessary to avoid summary judgment.” Ramsey v. Home Depot U.S.A., Inc., 124 So.3d 415, 418 (Fla. 1st DCA 2013). All of the above-quoted statements are merely conclusory assertions, and, as such, do not yield factual disputes about alleged willful misconduct by Michael Dur-den.
Appellants’ main contention in this lawsuit is that “the Board, led and controlled by Michael Durden,” wrongfully rejected McCoy’s proposal to buy the two Los An-geles radio stations for $62 million in favor of another proposal for only $35 million. But even assuming this assertion concerning a decision by the board could serve as grounds for Michael Durden, individually, to be held liable for willful misconduct, Appellants alleged no specific facts establishing that such misconduct occurred.
McCoy’s affidavit states, “The Board rejected my proposal out-of-hand, with total disregard of the obligations set forth in Paragraph [sic] Paragraphs 5.1(f), 5.4 and 5.6 of the Amended and Restated Operating Agreement.” Paragraph 5.1(f) of the operating agreement states:
The validity of any transaction, agreement or payment involving the Company and its Subsidiaries and the Manager or any Affiliate of the Manager otherwise permitted by the terms of this agreement or necessary or desirable in connection with the Company’s or its Subsidiaries’ business, shall not be affected by reason of such relationship between the Company and the Manager or between the Manager and such affiliate, provided such transaction, agreement or payment is (i) disclosed to each member of the Board ... and (ii) on terms that are fair and reasonable to the Company and otherwise complies with this agreement and the Act. Any transaction between the Company and its Subsidiaries, and the Manager or its affiliates, shall also be effected on such terms and conditions as are commercially. reasonable and proper.
Paragraph 5.4 states, in pertinent part, “The Manager shall exercise the powers granted hereby in a fiduciary capacity and in the best interests of the Company and its Subsidiaries.”
Paragraph 5.6(c), which defines the duties of care, loyalty, good faith and fair dealing as applied to conflicts of interest, contemplates the very scenario that occurred here, and states:
The Members agree (i) that the standard of duty of care and duty of loyalty, as well as the obligations of good faith and fair dealing, required under the Act will be satisfied so long as a Manager or Member believes that the terms of any contract or transaction giving rise to a conflict of interest were not unfair or unreasonable to the Company, (ii) the rights and interests of all other parties in interest may be taken into account in discharging such duties and obligations, including Members and their Affiliates who may be creditors or employees of the Company or persons contracting therewith, and (iii) that this standard is not unreasonable and otherwise complies with Section 608.423 of the [LLC] Act.... By way of example only, in the event the Board were considering two alternative proposals for an Approved Sale, the Board could consider, among other things, such facts as the Compa *410 ny’s state of affairs and financial status, contingencies present in competing proposals, the identities, reputation and financial soundness of other parties to the proposed transaction, the rights and interests of the other parties to the proposed transaction (including Affiliates of the Manager or Member), the relative uncertainties of the competing proposals, the nature of the consideration offered in the competing proposals, and any other facts as the Board deems relevant in its sole discretion, and could reasonably conclude that a competing proposal offering less consideration was in the best interest of the Company and should be approved[.]
(Emphasis added.)
Generally asserting that the board disregarded its obligations under paragraphs 5.1(f) and 5.4 of the operating agreement does not, without more,. give rise to a material factual dispute. Indeed, it is unclear how paragraph 5.1(f) even applies to the board decision at issue; McCoy’s affidavit provides no specifics. Similarly, the affidavit merely asserts that “The Board did not consider any of the factors set forth in Paragraphs 5.6 of the Amended Operating Agreement!)]” Not only is the assertion conclusory, and, therefore, incapable of creating a material factual dispute, paragraph 5.6(c) does not, by its plain terms, require consideration of any particular factors, such that failure to consider them could constitute willful misconduct.
Furthermore, none of the allegations in McCoy’s affidavit demonstrate how the 48-month-option-to-purchase proposal would have been of greater benefit to Magic than the competing proposal, except to say that “[t]he Socal935 proposal was vastly inferi- or because the offer by Socal935 was 27 million less than my [McCoy’s] offer, and Magic would still have been liable for the remainder of the Durden Enterprises Loan.” Appellants’ complaint indicates the Socal935 proposal was for $5 million cash at closing plus a $30 million note (held by which entity, it is not known) at six percent interest. The McCoy proposal, on the other hand, did not include immediate purchase of the Los Angeles radio stations. Rather, McCoy’s newly-created independent entity would manage the two stations for a period of 48 months, during which time this entity would keep all revenues attributable to the stations; the new entity would make graduated interest-only payments to Magic, but not beginning until the seventh month; at the end of the 48-month period the new entity would have the option to purchase the stations for $62 million; that the $62 million would constitute payment in full of Magic’s indebtedness to DE2, even if there remained a balance; and DE2’s interests in Magic would be acquired by McCoy’s new entity. Given the latitude and discretion the board had under paragraph 5.6(c) to reject McCoy’s proposal despite any apparent conflict of interest, McCoy’s affidavit simply fails to support a charge of willful misconduct.
Absent some specific, non-conclusory allegation of willful misconduct by Michael Durden, there was no factual dispute precluding summary judgment in his favor. And the trial court correctly found that the undisputed facts failed to establish a basis for holding Michael Durden liable to Appellants.
For the foregoing reasons, the final summary judgment the trial court entered in Appellees’ favor is correct, and this court should affirm.